Citation Nr: 1749162 
Decision Date: 10/31/17 Archive Date: 11/06/17

DOCKET NO. 10-10 924 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUE

Entitlement to an increased rating for cross union of the distal tibia and fibula of the right lower extremity, currently rated 10 percent disabling.

REPRESENTATION

Veteran represented by: The American Legion



ATTORNEY FOR THE BOARD

M. G. Perkins, Associate Counsel

INTRODUCTION

The Veteran had active duty from October 1986 to July 1987.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. The RO in Montgomery, Alabama has jurisdiction over this matter.

This matter was most recently before the Board in February 2017, and remanded for additional development. 


FINDING OF FACT

Throughout the period on appeal, the Veteran's cross union of the distal tibia and fibula disability of the right lower extremity manifested malunion with a moderate ankle disability.


CONCLUSION OF LAW

The criteria for a 20 percent rating, but no higher, for cross union of the distal tibia and fibula disability of the right lower extremity have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.71a, Diagnostic Code 5262 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran is seeking an increased rating for his right ankle disability. The Veteran contends that this disability has gotten progressively worse. 

Ratings for service-connected disabilities are determined by comparing the Veteran's symptoms with criteria listed in VA's Schedule for Rating Disabilities, which is based, as far as practically can be determined, on average impairment in earning capacity. Separate diagnostic codes identify the various disabilities. 38 C.F.R. Part 4. When rating a service-connected disability, the entire history must be borne in mind. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. The Board will consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal exertion, strength, speed, coordination and endurance. It is essential that the examination upon which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show evidence of disuse, either through atrophy, the condition of the skin, absence of normal callosity or the like. 38 C.F.R. § 4.40. 

Evidence of pain, weakened movement, excess fatigability, or incoordination must be considered in determining the level of associated functional loss, taking into account any part of the musculoskeletal system that becomes painful on use. 38 C.F.R. § 4.40; DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions regarding the avoidance of pyramiding do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including flare ups. 38 C.F.R. § 4.14. 

The intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. 

In an August 1987 rating decision, service connection was granted and an initial 30 percent disability rating assigned for residuals of a fracture to the right distal fibula that had been treated with open reduction and internal fixation. In March 1989, the disability was characterized is cross union of the distal tibia and fibula and the rating was reduced to 20 percent, effective June 1, 1989. In February 1991, the rating was reduced to the current level of 10 percent, effective June 1, 1991.

The Veteran submitted the current claim for increased rating in May 2009 stating he has pain and is unable to stand for long periods. 

The Veteran's right tibia and fibula disability has consistently been rated under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5262. Under DC 5262, nonunion of the tibia and fibula with loose motion, requiring a brace warrants a 40 percent rating. Malunion of the tibia and fibula with marked knee or ankle disability warrants a 30 percent rating; with moderate knee or ankle disability, 20 percent, and; with slight knee or ankle disability, 10 percent. 

The words "slight," "moderate," and "marked" are not defined in the VA Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." See 38 C.F.R. § 4.6.

Normal range of motion for the ankle is 20 degrees of dorsiflexion and 45 degrees of plantar flexion. 38 C.F.R. § 4.71a, Plate II. 

The Veteran was afforded a medical examination in June 2010. During the examination, the examiner diagnosed the Veteran with a previous fracture of the distal right tibia and fibula with residual chronic right foot strain. For the physical findings, the examiner copied the Veteran's June 2009 imaging report that stated: "There is heterotopic ossification with bony bridging at the distal tibiofibular syndesmosis. There's no significant degenerative abnormality. The ankle mortise is maintained. There is no soft tissue swelling or joint effusion. There is mild soft tissue infiltration of kager's fat pad, possible secondary to fluid." The examiner also stated that there were no effects of the Veteran's usual occupation.

In the February 2017 remand, the Board noted the previous examinations were inadequate under Correia v. McDonald, 28 Vet. App. 158 (2016) and new examinations were obtained. 

The Veteran was afforded VA knee and ankle examinations in May 2017, which noted a diagnosis of cross union of the distal tibia and fibula of right lower extremity with residual ankle condition. Knee examination was essentially normal, with normal range of motion (ROM) findings. The ankle examiner specifically noted that the Veteran was experiencing a flare-up at the time of the examination. The Veteran described his flare ups and functional impairment as edema and limitation of range of motion (ROM), ambulating/standing duration, and running. ROM of the Veteran's ankle was measured and resulted in 0 to 10 degrees for dorsiflexion, and 0 to 45 degrees for plantar flexion. The examiner noted the Veteran had pain during ROM testing for both dorsiflexion and plantar flexion. The Veteran also had pain with weight bearing. The examiner also noted that the Veteran did not manifest objective evidence of localized tenderness, or pain on palpation of the joint or associated tissue. The Veteran was able to complete repetitive ROM testing, times three, and did not experience additional loss of function or range of motion. However, the examiner noted the Veteran's pain, weakness, fatigability and incoordination significantly limit his functional ability with repeated use over a period of time. Muscle strength and joint stability were normal. Additionally, the Veteran uses a cane regularly, for stability and walking duration.

The examiner also documented disturbance of locomotion, and interference with standing as additional contributing factors of the Veteran's disability. The Veteran's left ankle tested within normal limits. The examiner also documented standing, ambulating and ROM limitations impact the Veteran's ability to perform some occupational tasks. The examiner specifically comment that while there is limitation of occupations that require standing/ambulating duration and lifting, the Veteran is not significantly limited in occupations where sitting is involved. 

The Board finds that DC 5262 is the proper diagnostic code to evaluate the Veteran's right lower extremity disability picture as a whole, since the disability is manifested by limitation of motion of the ankle. After reviewing the evidence of record, the Board finds that a rating of 20 percent is warranted for the Veteran's disability of cross union of the distal tibia and fibula of the right lower extremity. ROM is no better than 10 degrees of dorsiflexion and 45 degrees of plantar flexion. The Veteran also experiences pain and swelling in his ankle, to include weight bearing and non-weight bearing. The limitation of motion is more approximate to a moderate disability under DC 5262. A higher disability rating is not warranted since the Veteran's disability does not manifest signs or symptoms attributed with a marked ankle disability, nonunion of the tibia and fibula, or ankylosis.


The Board has considered the Veteran's competent, lay statements that his ankle disability is worse than currently evaluated. Layno v. Brown, 6 Vet. App. 465 (1994). He is not, however, competent to identify a specific level of disability of this disorder according to the appropriate diagnostic codes. Such competent evidence concerning the nature and extent of the Veteran's disabilities has been provided by the medical personnel who have examined him during the current appeal and who have rendered pertinent opinions in conjunction with the evaluations. The medical findings (as provided in the examination reports and the clinical records) directly address the criteria under which this disability is evaluated. As such, the Board finds these records to be more probative than the Veteran's subjective complaints of increased symptomatology. 


ORDER

Entitlement to a disability rating of 20 percent for cross union of the distal tibia and fibula of the right lower extremity is granted, subject to the laws and regulations governing the award of monetary benefits.




____________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs